# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAYLA WRIGHT and** | : | **Civil No. 1:13-CV-804** |
| **AMBER CALLAHAN,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **NANETTE THOMAS, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.    Statement of facts and of the Case

This case, which comes before the Court on a motion to dismiss, arises out of a school field trip gone awry.  According to the plaintiffs' complaint, in May 2012, the plaintiffs were students at the Huntingdon Area School District who participated in a school sponsored senior class trip to Busch Gardens, in Williamsburg, Virginia. (Doc. 1-3.)  In preparation for this trip the school district adopted certain procedures and policies.  (Id., Ex. E.)  These procedures called for faculty chaperones to oversee the trip; advised students that they needed advance permission from chaperones to leave to motel; and warned students that any infractions could result in the student being confined to the motel until the students' parents retrieved them at their own expense.  (Id.)  With this understanding of the class trip rules, the plaintiffs signed up to participate in this senior class trip.

When the plaintiffs arrived at the amusement park they were in the company of another student, CB, who was detained by park security on suspicion of shoplifting. The complaint alleges that the plaintiffs were not involved in any shoplifting, but were briefly detained along with their classmate, and were questioned regarding whether they had assisted in the shoplifting. (Id.) The plaintiffs, and CB, were then banned from the park by park officials for one year. (Id., ¶¶16-17.) Thus, it is clear from the plaintiffs' complaint that the decision to ban the plaintiffs from Busch Gardens was made by private actors, the Busch Garden officials. (Id.)

Presented with this action by Busch Garden officials, private actors who had effectively barred the plaintiffs from engaging in a significant aspect of the senior class trip recreational activities, the complaint further alleges that defendant Thomas, a teacher at the school who was participating as a chaperone on the trip, "failed to conduct a reasonable investigation or to allow the plaintiffs to clear their names" thus denying the plaintiffs due process. (Id., ¶¶30-37, 51-56.) The complaint also alleges that Thomas wrongfully confined the students to the motel, while their parents were called to pick them up, actions which allegedly caused the plaintiffs considerable anguish, embarrassment and humiliation. (Id.)

These actions by defendant Thomas appear to comprise the gist of the plaintiff's federal civil rights claim, as set forth in the complaint. (Id., ¶¶30-37, 51-

56.) Notably, the factual averments supporting these claims relate solely to the actions taken by defendant Thomas. Defendant Kline is not mentioned as an actor with respect to the decisions made by the trip chaperones during the senior class trip. Instead, the only factual assertions relating to defendant Kline involve conduct occurring several months after this trip; namely, a letter authored by Kline on August 3, 2012, and sent to plaintiffs' counsel which was allegedly defamatory. (Id., ¶¶ 44-50.) According to the plaintiffs, defendant Thomas also defamed them to other students on the field trip by falsely stating that they had been arrested for shoplifting. Finally, the plaintiffs allege that these defamatory statements also violated the students' right to privacy of their school records.

On these facts, the defendants have now moved to dismiss the plaintiffs' federal civil rights action, arguing that the plaintiffs have failed to state a claim upon which relief may be granted. (Doc. 3) This motion to dismiss has been fully briefed by the parties, and is now ripe for resolution. (Docs.11 and 17) For the reasons set forth below, we conclude that the plaintiffs' federal civil rights claims fail as a matter of law, and further submit that it would be inappropriate to address the plaintiffs' pendent state claim. Therefore, it is recommended that the motion to dismiss be granted.

## III.  Discussion

### A.  Motion to Dismiss–Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burch v. Milberg

5

Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied</u>, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick,</u> 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.,</u> 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also, U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. <u>Jordan v. Fox, Rothschild, O'Brien &Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B.** **The Plaintiff's §1983 Claims Fail**

      **1.** **The Actions of a Private Party, Busch Gardens, Cannot Give Rise to Liability Under §1983**

Judged against these benchmarks, we find that on the facts alleged by the plaintiffs in their complaint, that the plaintiffs' §1983 federal civil rights claims fail as a matter of law. In considering these §1983 claims it is well-established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F.Supp. 409, 416 (M.D.Pa. 1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added).  Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiffs allege and prove that they were harmed by actions taken under color of law.  To the extent that a complaint seeks to premise liability on actions by private parties, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing of state action.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  This state action requirement has been applied to §1983 claims arising out of actions by private businesses to curtail shoplifting, a setting in which the United States Court of Appeals for the Third Circuit has long held that the conduct of these private actors cannot be considered "state action" giving rise to liability under this federal civil rights statute.  See Cruz v. Donnelly, 727 F.2d 79, 81 (3d Cir. 1984) citing Hernandez v. Schwegmann Bros., 673 F.2d 771 (5th Cir.1982); White v. Scrivner, 594 F.2d 140 (5th Cir.1979).

In short, it is well-settled that a private party's decision to detain, and ban, a suspected shoplifter from its facilities does not constitute state action, giving rise to liability under §1983.  Moreover, the plaintiffs do not contend that this private action can in any way be imputed to the defendant school officials.  Therefore, the decision

of Busch Garden officials to ban the plaintiffs, standing alone, cannot give rise to any liability under §1983.

> **2.** **The Conduct of the Defendants Following the Decision By Busch Gardens to Ban the Plaintiffs Did Not Violate the Plaintiffs' Constitutional Rights**

This private action, in turn, limited and circumscribed the options available to school officials. According to the plaintiff's complaint, Busch Gardens–the destination for the field trip–had banned the plaintiffs from entering their facility. Nothing about this private action permits and civil rights liability against the defendants, and it is not alleged that the defendants had the ability to countermand or set aside the decision made by this private party to restrict the access of the plaintiffs to its facility. Furthermore, under the rules established in advance for this school trip, all students, including the plaintiffs were informed that they would not be permitted to leave the motel without prior permission, and that they could be subject to having the field trip curtailed until the students' parents retrieved them at their own expense. The plaintiffs' complaint alleges that the course of action outlined in the field trip rules is precisely the course followed by defendant Thomas. Thus, according to the complaint, Thomas did not allow the plaintiffs to leave the motel once they had been banned from Busch Gardens, and advised the plaintiffs' parents to pick up the

children, whose senior class trip had curtailed by the decision of private parties to forbid their re-entry at the park.

While the precise tenor of the plaintiff's constitutional claims is difficult to discern from the complaint, it appears that the plaintiff may be asserting procedural and substantive due process claims, coupled with Fourth Amendment unreasonable detention and seizure allegations. As we assess these claims in this particular school setting, and when we discuss the rights and responsibilities of students and school officials relating to school field trips, we begin with the familiar proposition that students:

> [D]o not "'shed their constitutional rights' at the school house door" and that deprivations of liberty in the school context may implicate both procedural and substantive due process liberty interests. These rights, however, are circumscribed by the need for effective and often immediate action by school officials to maintain order and discipline. *De minimis* . . . deprivations of liberty in the course of the disciplining of a student do not implicate procedural due process requirements. Likewise, punishment does not implicate substantive due process concerns unless the action is "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."
>
> Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1080-81 (5th Cir. 1995) citing Goss v. Lopez, 419 U.S. 565, 574 (1975)

Turning first to the components of procedural due process in a school setting, "[t]o state a procedural due process claim under section 1983, the plaintiff must allege

that (1) she was deprived of an interest encompassed within the Fourteenth Amendment's protection of life, liberty, and property; and (2) the procedures available to the plaintiff did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000)." Kirby v. Loyalsock Twp. Sch. Dist., 837 F. Supp. 2d 467, 476-77 (M.D. Pa. 2011). Here, the gravamen of the plaintiffs' complaint is that their enjoyment of an extracurricular activity, a senior trip, was curtailed without due process. Yet, "many courts have held that a public school student does not have a protected property interest in extracurricular activities. See Lowery v. Euverard, 497 F.3d 584, 588 (6th Cir.2007) ('It is well-established that students do not have a general constitutional right to participate in extracurricular athletics.'); Angstadt v. Midd–West Sch. Dist., 377 F.3d 338, 344 (3d Cir.2004) (affirming district court ruling that public school student did not have a protected property interest in extracurricular activities); Davenport v. Randolph Cnty. Bd. of Educ., 730 F.2d 1395 (11th Cir.1984); Hebert v. Ventetuolo, 638 F.2d 5 (1st Cir.1981); Walsh v. La. High Sch. Athletic Ass'n, 616 F.2d 152 (5th Cir.1980); Dominic J., 362 F.Supp.2d at 571–72 (finding that public school student did not have a protected property interest in participating in extracurricular activities); Dallam v. Cumberland Valley Sch. Dist., 391 F.Supp. 358 (M.D.Pa.1975)." Kirby v. Loyalsock Twp. Sch. Dist., 837 F. Supp. 2d 467, 477 (M.D. Pa. 2011). Therefore, it is unclear from the plaintiffs' complaint

that they have satisfied the first element of a procedural due process claim by properly

identifying properly a property interest subject to procedural due process protection

 As for substantive due process claims arising out of school administrators' efforts

to address student during school activities, it is well settled that:

> The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). "[T]he substantive component of the due process clause is violated by [state conduct] when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento, 523 U.S. at 847, 118 S.Ct. at 1717 (citation omitted). Thus, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849, 118 S.Ct. at 1718
>
> Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001).

 Thus, a substantive due process claim in an academic setting may only be premised

on conduct which "can properly be characterized as arbitrary, or conscience shocking,

in a constitutional sense," id., one of the most exacting standards defined by the law.

Similar benchmarks guide the courts in assessing student claims that actions

by school staff constituted an unlawful search or seizure forbidden by the Fourth

Amendment. Thus, "seizures in the public school context to be governed by the

reasonableness standard, giving special consideration to the goals and responsibilities of our public schools," and it is clear that "[o]nce under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators." Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 148-49 (3d Cir. 2005). Applying these guideposts courts have held that school officials chaperoning field trips may exercise discretion, conduct reasonable searches, and briefly detain or restrain the freedom of movement of students who are participating in school-sponsored field trips. See e.g., Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1080-81 (5th Cir. 1995)(detaining student during field trip); Rhodes v. Guarricino, 54 F. Supp. 2d 186, 190 (S.D.N.Y. 1999)(citing Bridgman v. New Trier High Sch. Dist. No. 203, 128 F.3d 1146 (7th Cir.1997) and Cornfield v. Consolidated High Sch. Dist., 991 F.2d 1316 (7th Cir.1993).)

Judged by these standards, we find that the actions taken by defendant Thomas, as described in the complaint, did not violate any of the plaintiffs' clearly established constitutional rights. At the outset, we find that there is no clear procedural due process violation in this case, since the plaintiffs, as public school students, did not have a protected property interest in extracurricular activities. Further, it is entirely unclear what immediate relief could have been afforded to the plaintiffs through the additional procedural due process they seek, some sort of immediate hearing or

investigation into the shoplifting allegations by school officials. That inquiry by defendant Thomas would not have permitted the plaintiffs to more actively participate in the field trip since their participation had been restricted by the decision of Busch Gardens, a private actor, to ban them from the park.

Nor can it be said that the decision to curtail the participation of the students during the field trip once they had been banned from the park was one which shocked the conscience, violating substantive due process, or rose to the level of an unreasonable detention of the plaintiffs. Rather, these events were regrettable, but predictable, consequences of the decision by private parties, the Busch Garden officials, to ban the plaintiffs from the park. That decision by these private parties curtailed the senior trip for the plaintiffs, and under the trip rules limited the plaintiffs to their motel unless they had permission to foray beyond the motel. These travel restrictions were prudent in a school field trip setting; had previously been disclosed to students in the field trip rules; entailed a *de minimis* intrusion upon their freedom of movement; and arose in a factual context where field trip "students who are under public school supervision have diminished Fourth Amendment protection." Rhodes v. Guarricino, 54 F. Supp. 2d 186, 190 (S.D.N.Y. 1999). Therefore, these restrictions simply do not rise to the level of conduct giving rise to a claim of a constitutional dimension.

### 3. The Complaint Does Not Allege Facts Giving Rise to Supervisory Liability Against Defendant Kline Under §1983

Furthermore, to the extent that these constitutional claims arise out of the restrictions imposed upon the plaintiffs during the field trip, there are no well-pleaded facts in the complaint alleging that defendant Kline played any role in the decisions that led to these restrictions. Instead, the only factual assertions relating to defendant Kline involve conduct occurring several months after this trip; namely, a letter authored by Kline on August 3, 2012, and sent to plaintiffs' counsel which was allegedly defamatory. (Id., ¶¶ 44-50.)

This, too, is a fatal flaw with respect to any §1983 claims against defendant Kline, a school supervisor. When considering such claims, at the outset it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was an agency supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiffs must show that the supervisory defendants actively deprived them of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of

actual knowledge and acquiescence in the challenged practice.  Robinson v. City of

Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have
personal involvement in the alleged wrongdoing; liability cannot be
predicated solely on the operation of *respondeat superior*.  Personal
involvement can be shown through allegations of personal direction or
of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional
conduct of their subordinates under a theory of *respondeat superior*. .
. . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
liability "will only result from his own neglect in not properly
superintending the discharge" of his subordinates' duties); Robertson v.
Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
public officer or agent is not responsible for the misfeasances or position
wrongs, or for the nonfeasances, or negligences, or omissions of duty,
of the subagents or servants or other persons properly employed by or
under him, in the discharge of his official duties").  Because vicarious
liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead
that each Government-official defendant, through the official's own
individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Here, the plaintiffs' complaint contains no well-pleaded facts relating to defendant Kline's involvement in these decisions to curtail the plaintiffs' school field trip, and plainly fails to allege facts showing defendant Kline's "[p]ersonal involvement . . . through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Since constitutional tort liability cannot rest on mere assertions of *respondeat superior* liability, this complaint simply fails to state a constitutional claim against this supervisory defendant.

### 4. The Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. §§ 1232g and h, Does Not Create a Private Right of Action for the Plaintiffs

Nor can the plaintiffs premise an independent federal claim on 20 U.S.C. §1232h, a federal statute governing privacy of student records. In ascertaining whether a particular federal law creates a private right of action: "the relevant inquiry for determining whether a private right of action exists appears to have two steps: (1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy? Only if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a federal statute. See, e.g., Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh, 382 F.3d 412, 421 (3d Cir.2004) ('Put succinctly, for an implied right of action to exist, a statute must

17

manifest Congress's intent to create (1) a personal right, and (2) a private remedy'
(citing Sandoval, 532 U.S. at 286, 121 S.Ct. 1511))." Wisniewski v. Rodale, Inc., 510
F.3d 294, 301 (3d Cir. 2007). Applying this two-part test, the Supreme Court has
held that the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C.
§ 1232g, which prohibits the federal funding of schools that have a policy or practice
of permitting the release of students' education records without their parents' written
consent, does not provide for an implied private right of action against school
officials. Gonzaga Univ. v. Doe, 536 U.S. 273 (2002). Therefore, this statute simply
does not provide a basis for a free-standing, independent claim against the defendants.

### 5. The Defendants Are Entitled to Qualified Immunity

But even if we found that the plaintiffs had stated a colorable constitutional or
statutory claim, the defendants would still be entitled to qualified immunity from
these claims for damages. In order to establish a civil rights claim the plaintiffs must
show the deprivation of a right secured by the United States Constitution or the laws
of the United States. Satisfying these elements alone, however, does not guarantee
that the plaintiffs are entitled to recover damages from these public officials.
Government officials performing "discretionary functions," are insulated from suit
if their conduct did not violate a "clearly established statutory or constitutional right[]
of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603,

609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established"

at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  Wilson, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."  Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Id.  Where

a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, courts have previously found that students have no constitutionally protected right to participate in extracurricular activities. See Lowery v. Euverard, 497 F.3d 584, 588 (6th Cir.2007) ('It is well-established that students do not have a general constitutional right to participate in extracurricular athletics.'); Angstadt v. Midd–West Sch. Dist., 377 F.3d 338, 344 (3d Cir.2004) (affirming district court ruling that public school student did not have a protected property interest in extracurricular activities); Davenport v. Randolph Cnty. Bd. of Educ., 730 F.2d 1395

(11th Cir.1984); Hebert v. Ventetuolo, 638 F.2d 5 (1st Cir.1981); Walsh v. La. High Sch. Athletic Ass'n, 616 F.2d 152 (5th Cir.1980); Kirby v. Loyalsock Twp. Sch. Dist., 837 F. Supp. 2d 467, 477 (M.D. Pa. 2011); Dominic J., 362 F.Supp.2d at 571–72 (finding that public school student did not have a protected property interest in participating in extracurricular activities); Dallam v. Cumberland Valley Sch. Dist., 391 F.Supp. 358 (M.D.Pa.1975). Courts have also sustained the actions of field trip chaperones in restraining student freedom of movement for brief periods of time, finding that school officials are entitled to qualified immunity from damages. Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1080-81 (5th Cir. 1995)(detaining student during field trip). Given the state of the law in this field, in this setting the defendants simply could not have recognized that their actions would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, the defendants are entitled to qualified immunity on these federal claim.[1]

---

[1]While the defendants have not separately argued qualified immunity in this motion, this Court is entitled to address this defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

22

**6.     This Court Should Decline to Exercise Jurisdiction Over the Plaintiffs' State Law Claims**

The dismissal of these federal constitutional claims, in turn, dictates the appropriate course for this Court to follow in addressing any ancillary state law defamation claims that the plaintiffs may wish to pursue against these defendants. In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil rights violations which are found not to state a cause of action upon which relief can be granted, it has been observed that the proper course is for: "[T]he court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, No. 05–2150, 2007 WL 3033865, at *13 (M.D.Pa. Oct.15, 2007) (dismissing ancillary malpractice claim). This course of action, dismissing ancillary state claims when a plaintiff's federal constitutional claims fail as an matter of law, has also been expressly endorsed by the United States Court of Appeals for the Third Circuit in Ham v. Greer, 269 F. App'x 149, 151 (3d Cir.2008). In Ham, the appellate court approved this practice, stating in terms that are

equally applicable here that: "Because the District Court appropriately dismissed [the plaintiff's] <u>Bivens</u> claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); <u>see United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Tully v. Mott Supermkts., Inc</u>., 540 F.2d 187, 196 (3d Cir.1976)." <u>Id</u>. at 151. <u>See Klatch-Maynard v. Sugarloaf Twp.</u>, 3:06-CV-845, 2010 WL 5789390 (M.D. Pa. Nov. 8, 2010) <u>report and recommendation adopted</u>, 3:06CV845, 2011 WL 532168 (M.D. Pa. Feb. 8, 2011).

In sum, in this case the plaintiffs' federal civil rights claims, which form the basis of removal in this case to federal court, fail as a matter of law. Since these federal claims are subject to dismissal , we are cautioned to refrain from exercising supplemental jurisdiction of any ancillary or pendant state law claims, and should dismiss those claims as well, without prejudice to litigation of these state law claims in state court.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss should be GRANTED. (Doc. 3)

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28

U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of November 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate